UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

XEROX CORPORATION,

                              Plaintiff,

                                              **No. 6:18-cv-06154-MAT**
                    -vs-                       **DECISION AND ORDER**

JCTB INCORPORATED, SHIRLEY BUI, and
JIMMY CAUDILLO a/k/a JAIME CAUDILLO,

                              Defendants.

_____

## I.    Introduction

This is an action for breach of contract brought by Xerox
Corporation ("Xerox" or "Plaintiff") against JCTB Incorporated
("JCTB"), Shirley Bui ("Bui"), and Jimmy Caudillo, a/k/a Jaime
Caudillo ("Caudillo") (collectively, "Defendants"). Plaintiff
asserts four counts in the Complaint: (1) breach of an equipment
finance lease agreement; (2) breach of a promissory note;
(3) breach of a guaranty agreement; and (4) a declaration entitling
it to retake possession of the leased equipment. The Court has
jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1)
based on the complete diversity of citizenship and the amount in
controversy.

Presently before the Court is Plaintiff's pre-discovery Motion
for Summary Judgment and to Dismiss Counterclaims (Docket Nos. 17,
17-1, 17-2 & 17-3). Defendants filed a Memorandum of Law in
Opposition (Docket No. 19) and a Declaration (Docket No. 20).
Plaintiff filed a Reply (Docket No. 21). The motion was fully

submitted without oral argument on August 2, 2018. For the reasons discussed below, Plaintiff's motion is granted in its entirety.

## II. Factual Background

The Court's summary of the salient facts is drawn from Plaintiff's Statement of Undisputed Material Facts (Docket No. 17-1) and the evidence in admissible form cited therein, including the Affidavit of Janet Atkinson ("Atkinson Aff.") (Docket No. 17-2) and the attached exhibits ("Ex.") (*Id.*).

### A. The Finance Lease

On or about April 29, 2015, Plaintiff and JCTB entered into an equipment finance lease agreement ("the Finance Lease") pursuant to which JCTB leased four pieces of printing equipment ("the Leased Equipment"). *See* Atkinson Aff., ¶ 3 & Ex. A (Finance Lease). JCTB agreed to remit to Plaintiff (1) monthly minimum lease payments, along with (2) payments of print charges to be calculated based on the number of prints produced by the Leased Equipment during each month of the lease term.

The Finance Lease stated that JCTB's obligation to make all payments

> IS ABSOLUTE AND UNCONDITIONAL AND NOT SUBJECT TO DELAY,
> REDUCTION, SET-OFF, DEFENSE, COUNTERCLAIM OR RECOUPMENT
> FOR ANY REASON WHATSOEVER, IRRESPECTIVE OF XEROX'S
> PERFORMANCE OF ITS OBLIGATIONS [T]HEREUNDER.

Atkinson Aff., Ex. A, ¶ 24 (all capital letters in original). Identifying itself as "'finance lease' under Article 2A of the Uniform Commercial Code [("UCC")]," the Finance Lease further

provided that JCTB waived any implied warranty of fitness for a particular purpose and all "rights and remedies as a lessee under Article 2A" of the UCC. *Id.*, Ex. A, ¶ 30.

## B. The Modification Agreement

A little over a year and half later, Plaintiff and Defendants executed an agreement modifying the Finance Agreement ("Modification Agreement") effective December 15, 2016. *See* Atkinson Aff. ¶ 6 & Ex. B (Modification Agreement). Pursuant to this agreement, (1) JCTB acknowledged its default and resulting indebtedness to Plaintiff in the amount of $255,299.66 as of December 15, 2016; (2) JCTB agreed to execute a promissory note for a portion of its outstanding debt, plus interest; (3) Plaintiff agreed to modify the term of the Finance Lease and the amount of Defendants' future monthly minimum payments; and (4) Bui and Caudillo agreed to be guarantors of JCTB's payment obligations. *See* Atkinson Aff., Ex. B at pp. 1-3 & ¶ 5. All terms of the Finance Lease, apart from those expressly modified by the Modification Agreement, "remain[ed] in full force and effect[.]" *Id.*, Ex. B, ¶¶ 2, 7(h).

In addition, the Modification Agreement provided that "upon the occurrence of an Event of Default, Xerox shall immediately be entitled to pursue its rights and remedies under [the Finance Lease, as modified] and applicable law without notice." Atkinson Aff., Ex. B, ¶ 4. The Modification Agreement defined an "Event of

Default" as "any event or circumstance that is continuing and that, with the giving of notice, or the passage of time, or both, would constitute a default, breach or an event of default" under the Finance Lease, the Modification Agreement, or the Promissory Note. Atkinson Aff., Ex. B, ¶ 1(c). The Finance Lease specifically provided that JCTB will be in default if either "(1) Xerox does not receive any payment within 15 days after the date it is due, or (2) [JCTB] breach[es] any other obligation in this or any other agreement with Xerox." *Id.*, Ex. A, ¶ 22. The Finance Lease stated that if JCTB defaults under the Finance Lease, Plaintiff may, in addition to its other remedies, remove and retake possession of the Leased Equipment at JCTB's expense. *Id.*, ¶ 45 & Ex. A, ¶ 22. In addition, title in the Leased Equipment remains with Plaintiff, until such time as JCTB exercises the Purchase Option under the Finance Lease. *Id.*, ¶ 44 & Ex. A, ¶ 32.

### C. The Promissory Note and Guaranty

On or about December 15, 2016, JCTB executed the Promissory Note referenced in the Modification Agreement, which addressed a portion of JCTB's debt following its initial default under the Finance Lease. *See* Atkinson Aff., ¶ 27, Ex. H (Promissory Note). At the time, JCTB owed a principal sum of $186,401.95, plus interest from the date of execution of the Promissory Note, calculated at the rate of 8.75 percent per annum. *Id.* JCTB agreed to make monthly payments of $3,846.82 for months 25 through 84 of the Promissory

Note's term, as specified in the Payment Schedule attached to the Promissory Note. *Id.*, ¶ 28 & Ex. H at Schedule A. In the event of default, the Promissory Note stated, Plaintiff was immediately entitled to (1) the unpaid principal and interest due at the time of default, (2) interest on the outstanding principal at the rate of fifteen percent per annum, and (3) reasonable attorneys' fees and costs incurred to enforce the Promissory Note. *See* Atkinson Aff., ¶ 30 & Ex. H at 2.

Also on December 15, 2016, Bui and Caudillo executed a personal guaranty ("the Guaranty"), which was referenced in the Modification Agreement. *See* Atkinson Aff., ¶ 39 & Ex. I (Guaranty). The Guaranty required Bui and Caudillo each to "absolutely and unconditionally" guarantee to Xerox "the full and prompt payment when due, of all amounts owed by [JCTB] to Xerox," including payment obligations arising before and after December 15, 2016. *Id.*, Ex. I at 1.

**D.  Defendants' Defaults**

In accordance with the Finance Lease as modified by the Modification Agreement, Plaintiff submitted invoices to JCTB for monthly minimum lease payments and for print charges based on the number of prints produced using the Leased Equipment each month. JCTB remitted payments for several months but then stopped paying these invoices as required. *See* Atkinson Aff., ¶ 16. Plaintiff sent notifications to Defendants that it had not received payments

relating to multiple invoices, and that JCTB was in default under the Agreements. *Id.*, ¶¶ 17-18. With regard to the Promissory Note, JCTB remitted payments for several months, totaling $14,950.98, but then stopped making payments. *Id.*, ¶ 34. Plaintiff sent notifications to JCTB of its delinquency. *Id.*, ¶ 36. To date, neither JCTB, nor Bui, nor Caudillo, has paid any portion of the outstanding obligations owed to Plaintiff under the Finance Lease as modified by the Modification Agreement ($557,540.72), or the Promissory Note ($248,478.54, plus interest). *See* Atkinson Aff., ¶ 42. JCTB never exercised the Purchase Option for the Leased Equipment. *Id.*, ¶ 46.

## III. Plaintiff's Summary Judgment Motion

### A. Standard on a Motion for Summary Judgment

Federal Rule of Civil Procedure ("F.R.C.P.") 56(c) states that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court's role in determining a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* When considering a motion for summary judgment, the court must draw inferences from underlying facts "in

the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

**B.    The Material Facts Are Undisputed**

Western District of New York Local Rule of Civil Procedure 56(a)(1) ("L.R. 56(a)(1)") sets forth the required contents and form of a statement of facts in support of summary judgment motion. Plaintiff, in accordance with L.R. 56(a)(1), has set forth the material and essential facts as to which it contends there is no material dispute, citing admissible evidence. *See* Plaintiff's Statement of Facts ("Pl.'s SOF") (Docket No. 17-1). In particular, Plaintiff recited the pertinent terms of the Finance Lease, Modification Agreement, Promissory Note, and Guaranty (collectively, "the Agreements"); outlined Defendants' defaults under those agreements; and tabulated the damages owed pursuant to the Agreements.

In their counterstatement of facts ("Defs.' CSOF") (Docket No. 19-3), Defendants have not specifically addressed or controverted any of Plaintiff's facts. Instead, Defendants have disputed the enforceability of the Agreements' terms and asserted that a complete response to Plaintiff's statement of facts is impossible because no discovery has occurred. However, "[t]he non-movant cannot 'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material

facts,' . . . or defeat the motion through 'mere speculation or conjecture.'" *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (internal quotation and other quotations and citations omitted). F.R.C.P. 56(c)(1) provides that such an assertion must be supported by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Moreover, L.R. 56(a)(2) provides that "[e]ach numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." W.D.N.Y. L.R. 56(a)(2). The Court finds that Defendants have not fulfilled their obligations under F.R.C.P. 56(c), L.R. 56(a)(1), and L.R. 56(a)(2). Therefore, Plaintiff's statement of facts must be deemed admitted. *See*, *e.g.*, *Xerox Corp. v. Graphic Mgmt. Servs. Inc.*, 959 F. Supp.2d 311, 314-15 (W.D.N.Y. 2013) (holding that Xerox's material facts would be "deemed admitted for purposes of [its] motion for summary judgment" because the defendants' counterstatement consisted of "conclusory statements regarding the enforceability of a contract based on their alleged counterclaims.").

## C.    The Applicable Law Is New York Law

As jurisdiction is premised on diversity, the Court should apply the law of New York. *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000) (citing *Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 121 n. 5 (2d Cir. 1998) ("Jurisdiction in this case is premised on diversity, and the parties both present arguments based on New York law, the law of the forum state. It is therefore appropriate for this Court to apply New York law.") (citation omitted). The Agreements in question each contained a choice of law provision pursuant to which the parties agreed to submit to the jurisdiction of New York State or Federal courts and that the Agreements will be governed by New York law without regard to conflict-of-law principles. *See* Pl.'s SOF, ¶¶ 30 & 74; Atkinson Aff., Exs. A, ¶ 34; B, ¶¶ 25, 29-30; H at 2, 4; I, ¶¶ 16-17. "'As a general rule, choice of law provisions . . . are valid and enforceable in [New York].'" *Terwilliger*, 206 F.3d at 245 (quoting *Marine Midland Bank, N.A. v. United Missouri Bank, N.A.*, 643 N.Y.S.2d 528, 530 (1st Dep't 1996); other citations omitted; ellipsis in original).

Here, all of the relevant considerations weigh in favor of interpreting the Agreements under New York law: Plaintiff is a New York corporation, New York is the forum state, and, "most importantly, the Agreement[s] specif[y] that they [are] governed by

New York law." *Terwilliger*, 206 F.3d at 245. Accordingly, the Court

applies New York contract law. *Id.* (citation omitted).

### D. Plaintiff is Entitled to Summary Judgment on Counts I and IV for Defendants' Breach of the Finance Lease as Modified by the Modification Agreement

#### 1. The Finance Lease and Modification Agreement, by Their Terms, Unambiguously Impose an Absolute Duty to Pay

"[W]hen parties set down their agreement in a clear, complete

document, their writing should as a rule be enforced according to

its terms." *Refinemet Int'l Co. v. Eastbourne N.V.*, 25 F.3d 105,

108 (2d Cir. 1994) (quoting *W.W.W. Assocs., Inc. v. Giancontieri*,

77 N.Y.2d 157, 162 (1990); citations omitted). This principle

applies to the enforcement of so-called "hell or high water"[1]

clauses in finance leases. *BrooksAmerica Mortgage Corp.,* 419 F.3d

at 110. The Finance Lease at issue here contains such a "hell or

high water" clause which provides in relevant part that "[JCTB's]

OBLIGATION TO MAKE ALL PAYMENTS, AND TO PAY ANY OTHER AMOUNTS DUE

OR BECOME DUE, IS ABSOLUTE AND UNCONDITIONAL AND NOT SUBJECT TO

DELAY, REDUCTION, SET-OFF, DEFENSE, COUNTERCLAIM OR RECOUPMENT FOR

ANY REASON WHATSOEVER, IRRESPECTIVE OF XEROX'S PERFORMANCE OF ITS

---

[1]

When a lease "contain[s] a hell or high water clause, the lessee must make payments regardless of defective performance on the part of the lessor, that is, 'come hell or high water.'" *Wells Fargo Bank, N.A. v. BrooksAmerica Mortg. Corp.*, 419 F.3d 107, 110 (2d Cir. 2005) ("*BrooksAmerica*") (quoting 19 Richard A. Lord, Williston on Contracts § 53:28 (4th ed. 2004)).

OBLIGATIONS HEREUNDER. . . ." Pl.'s SOF, ¶ 23 & Atkinson Aff.,
Ex. A, ¶ 24 (all capitals in original). Except for those portions
of the Finance Lease expressly modified by the Modification
Agreement, the Finance Lease's provisions—including the "hell or
high water" clause—remained the same in full force and effect.
Atkinson Aff., ¶ 8 & Ex. B, ¶¶ 2, 7(h).

The Second Circuit has recognized that, at the district level,
courts "'have uniformly given full force and effect to "hell or
high water" clauses in the face of various kinds of defaults by the
party seeking to enforce them.'" *BrooksAmerica*, 419 F.3d at 110
(quoting *In re O.P.M. Leasing Servs., Inc.*, 21 B.R. 993, 1006-07
(Bankr. S.D.N.Y. 1982)). Here, the Finance Lease's "hell or high
water" clause, which was not altered or abrogated by the
Modification Agreement, "makes [JCTB]'s obligation to pay rent
absolute and unconditional[,]" *BrooksAmerica*, 419 F.3d at 110,
irrespective of Defendants' asserted defenses and counterclaims.
*See Xerox Corp. v. RP Digital Servs.*, 232 F. Supp.3d 321, 324
(W.D.N.Y. 2017) (lessee was liable under finance lease to lessor
for breach of contract, where agreement contained "hell or high
water" clause that created contractual duty for lessee to make
payments regardless of lessor's performance under agreement;
summary judgment granted to lessor despite undisputed fact that
lessee only stopped making payments after repeatedly informing

lessor of ongoing technical difficulties and performance deficiencies).

      **2.    The Self-Executing "Hell or High Water Clause" in UCC Art. 2A Makes Defendants' Duty to Pay Absolute**

The Finance Lease also incorporates the statutory, self-executing "hell or high water" clause referenced in Section 2-A-407 of the UCC. *See* N.Y. U.C.C. Law § 2-A-407, Off. Cmt. ("This section extends the benefits of the classic 'hell or high water' clause to a finance lease that is not a consumer lease. This section is self-executing; no special provision need be added to the contract."). The parties expressly and unambiguously agreed that the Finance Lease is a "'finance lease' under Article 2A of the Uniform Commercial Code" and that JCTB waived all "rights and remedies as a lessee under Article 2A." Atkinson Aff., Ex. A, ¶ 30. While a transaction may not qualify as a finance lease under the UCC definition of a finance lease, the parties may agree that a lease be treated as a finance lease, as they have here. *See* N.Y. U.C.C. Law § 2-A-103(1)(g), Off. Cmt. ("If a transaction does not qualify as a finance lease, the parties may achieve the same result by agreement; no negative implications are to be drawn if the transaction does not qualify.").

Treating a lease as a "finance lease" under Section 2-A-407 of the UCC automatically renders the lessee's obligations to make all payments "irrevocable" and "not subject to cancellation, termination, modification, repudiation, excuse, or substitution."

-12-

N.Y. U.C.C. Law § 2-A-407(2)(b); *id.*, § 2-A-407(2)(B), Off. Cmt. 2. In other words, the lessee must perform even if the lessor's performance is not in accordance with the contract. N.Y. U.C.C. Law § 2-A-407, Off. Cmt. 2 ("Th[is] section requires the lessee to perform even if the lessor's performance after the lessee's acceptance is not in accordance with the lease contract.").

"[W]here the finance lease is not a consumer lease, as is the case here, the so-called 'hell or high water clause' pursuant to which the lease becomes irrevocable and non-cancellable and requires the lessee to make payments irrespective of any defects in performance, is fully enforceable in New York in the absence of fraud." *Direct Capital Corp. v. New ABI Inc.*, 13 Misc. 3d 1151, 1164 (N.Y. Sup. Ct. 2006) (citations omitted). There is no suggestion of fraud in the present case, as discussed further below in the context of Defendants' counterclaim for fraudulent inducement.

Accordingly, whether the Court relies on the "hell or high water clause" in the Finance Lease, or the self-executing clause in UCC § 2-A-407 that is applicable based on the parties' agreement to treat the Finance Lease as a statutory finance lease under UCC Article 2A, Defendants were obligated to make all payments under the Agreements, regardless of Plaintiff's purported breach. *Accord*, *e.g.*, *Xerox Corp. v. Graphic Mgmt. Servs.*, 959 F. Supp.2d 311, 318 (W.D.N.Y. 2017).

### 3. There Are No Genuine Issues of Material Fact Regarding Counts I and IV

Where, as here, there is a "hell or high water" clause in an agreement (or a provision designating a lease agreement as a finance lease under Article 2A of the UCC), a lessor establishes entitlement to judgment as matter of law by demonstrating that the lessee executed the lease and then defaulted on its payment obligations. *See Gen. Elec. Capital Corp. v. Nat'l Tractor Trailer Sch., Inc.*, 667 N.Y.S.2d 614, 617 (Sup. Ct. 1997) (lessor of copying machine stated *prima facie* case of breach of finance lease contract; lessor alleged that parties entered into lease contract under which lessee agreed to make 60 monthly payments, that lessee stopped making payments after completing five, and that result was damages under lease equal to amount of remaining payments). Plaintiff here has established all of the requisite elements.

Likewise, with regard to Count IV, there is no genuine issue of material fact as to Plaintiff's ownership of, and right to retake possession of, the Leased Equipment under the Finance Lease as modified by the Modification Agreement. Accordingly, the Court grants judgment in Plaintiff's favor on Counts I and IV.

### C. Plaintiff is Entitled to Summary Judgment on Count II for JCTB's Breach of the Promissory Note

"Actions for recovery on a promissory note are appropriately decided by motion for summary judgment." *Camofi Master LDC v. Coll. P'ship, Inc.*, 452 F. Supp.2d 462, 470 (S.D.N.Y. 2006) (citing

-14-

*Eisenstein v. Kelly Music & Entm't Corp.*, No. 97 Civ. 4649(DC), 1998 WL 289734, at *4 (S.D.N.Y. June 4, 1998) (further citations omitted)). To make out a *prima facie* case, "a plaintiff must simply show proof of a note and failure to make payment." *Eisenstein*, 1998 WL 289734, at *4 (internal citations and quotation marks omitted); *see also Gateway State Bank v. Shangri-La Private Club for Women, Inc.*, 113 A.D.2d 791, 791-92 (2d Dep't 1985) (plaintiff was entitled to summary judgment on promissory note where there was no issue of fact as to (1) "proof of the note" and (2) defendant's "failure to make payments called for by its terms"), *aff'd*, 67 N.Y.2d 627 (1986). When a plaintiff has established a *prima facie* claim, the burden shifts to the defendant to prove the "'existence of a triable issue of fact in the form of a *bona fide* defense against the note.'" *Nat'l Union Fire Ins. Co. v. Keenan*, No. 93 Civ. 6784(LLS), 2005 WL 736233, at *1 (S.D.N.Y. Mar. 31, 2005) (quoting *Couch White L.L.P. v. Kelly*, 729 N.Y.S.2d 206, 207 (3d Dep't 2001)).

This Court has already found that Plaintiff has established the absence of genuine issues of material fact as to the existence of the Promissory Note and its execution by JCTB. And, the Promissory Note contains unambiguous language requiring JCTB to submit payments to Plaintiff throughout the duration of the Promissory Note's 84-month term as specified in a schedule. Finally, there is no genuine issue of material fact that JCTB

ceased making its required payments under the Promissory Note. *See* Pl.'s SOF, ¶¶ 50-52, 55-57; Atkinson Aff., Ex. H.

Defendants, in their opposition memorandum of law, only address Plaintiff's cause of action regarding the Finance Lease (Count I) and do not set forth any argument against dismissal of Count II regarding breach of the Promissory Note. The Second Circuit has "held that when a counseled party moves for summary judgment, 'a partial response [by the non-movant] arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims.'" *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) (quoting *Jackson v. Federal Express*, 766 F.3d 189, 195 (2d Cir. 2014); footnote omitted). Here, Plaintiff unequivocally moved for dismissal of all counts of the Complaint. Therefore, it is "appropriate" to infer from [Defendants'] partial opposition that relevant claims or defenses that are not defended have been abandoned." *Jackson*, 766 F.3d at 196, 198.

Plaintiff has established its entitlement as a matter of law to judgment in its favor on Count II. Moreover, the Court finds that Defendants have abandoned any defense to this cause of action. Plaintiff's motion for summary judgment as to Count II is granted.

**D. Plaintiff Is Entitled to Summary Judgment on Count III for the Individual Defendants' Breach of the Guaranty**

Under New York law, a guaranty "is the promise to answer for the payment of some debt or the performance of some obligation, on default of such payment or performance, by a third person who is liable in the first instance." *Terwilliger*, 206 F.3d at 246 (internal citations omitted). The Second Circuit has noted that "guarantee agreements are construed *strictissimi juris* under New York law," which "mandates that the 'obligations undertaken by the guarantor are to be strictly applied[.]'" *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 188 F.3d 31, 34 (2d Cir. 1999) (internal citation and quotation omitted). However, "this application occurs only 'after the meaning of the contract of guarantee has been determined according to the ordinary principles of contract construction.'" *Id.* (quoting *Banco Portugues do Atlantico v. Asland, S.A.*, 745 F. Supp. 962, 967 (S.D.N.Y. 1990) (further citations omitted)). If the intent of the parties to a guaranty is clear and unambiguous based on an examination of the integrated writing, the court may determine the guaranty's proper interpretation by means of summary judgment. *American Home Assur. Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 316 (2d Cir. 2006) (citation omitted).

"In order to recover under the terms of a guaranty, the obligee must establish a *prima facie* case, namely, 'proof of the

note, the guarantees, and the failure to make payment in accordance with their terms[.]'" *Tucker Leasing Capital Corp. v. Marin Med. Mgmt., Inc.*, 833 F. Supp. 948, 957 (E.D.N.Y. 1993) (quoting *Key Bank of Long Island v. Burns*, 556 N.Y.S.2d 829, 830 (2d Dep't 1990)). The Court finds that Plaintiff has established a *prima facie* case. First, Plaintiff has submitted the Guaranty, a separate and independent writing reflecting JCTB's underlying obligation to it, based on the Finance Lease and Promissory Note.

Second, the guarantees set forth in the Guaranty are clear and unambiguous. Pursuant to the Guaranty, Bui and Caudillo expressly agreed to "absolutely and unconditionally" guarantee to Xerox "the full and prompt payment when due, of all amounts owed by [JCTB] to Xerox," including all amounts due or to become due under the Modification Agreement, the Promissory Note, and "all sale agreements and leases now or hereafter between Xerox and [JCTB], including, without limitation" the Finance Lease, together with "any costs of collection of the same, including attorneys' fees and expenses." Atkinson Aff., Ex. I at 1. The Guaranty also states that it is "an absolute, unconditional and continuing guaranty of payment and performance of the Guaranteed Obligations." *Id.,* Ex. I, ¶ 1 Moreover, Bui and Caudillo "waive[d] any and all defenses, claims, setoffs, and discharges" of JCTB pertaining to any of the payment obligations guaranteed under the Guaranty, and agreed that they "shall not assert, plead or enforce against Xerox . . . any

setoff available against Xerox to [JCTB] or any other such persons, whether or not on account of a related transaction." *Id.*, Ex. I, ¶ 8. The Guaranty further provides that it "shall be enforceable against each person signing" it, and that "[a]ll agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several in each and every particular and shall be fully binding upon and enforceable against either, any or all parties signing as Guarantor," i.e., Bui and Caudillo. *Id.*, Ex. I, ¶ 8. Third, Plaintiff has presented proof in admissible form establishing that Bui and Caudillo have failed to remit payments in accordance with the Guaranty's terms. *See* Atkinson Aff., ¶¶ 42-43.

Defendants, in their opposition memorandum of law, do not set forth any argument against dismissal of Count III regarding breach of the Guaranty. The Second Circuit has "held that when a counseled party moves for summary judgment, 'a partial response [by the non-movant] arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims.'" *Jackson*, 766 F.3d at 196, 198; footnote omitted). Thus, the Court finds it "appropriate" to "infer from [Defendants'] partial opposition that relevant claims or defenses that are not defended have been abandoned." *Jackson*, 766 F.3d at 196, 198.

Plaintiff has established its entitlement as a matter of law to judgment in its favor on Count III. Moreover, the Court finds

that Defendants have abandoned any defense to this claim. Plaintiff's motion for summary judgment as to Count III is granted.

## IV. Plaintiffs' Motion to Dismiss Defendants' Counterclaims

### A. Standard on a Motion to Dismiss

To withstand a dismissal motion pursuant to F.R.C.P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court generally considers only the factual allegations in the complaint and "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (citations omitted). The "plausibility" standard is met when the litigant "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). Determining plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

## B. Defendants' Counterclaim for Breach of Contract Fails as a Matter of Law

Defendants assert a counterclaim for breach of contract, alleging that the limitation of remedies provision in the Finance Lease is unenforceable. Here, Paragraph 1 of the Terms and Conditions of the Finance Lease as modified states that if JCTB is not "totally satisfied with any Non-SP Equipment delivered under [the] [Finance Lease], Xerox will, at [JCTB's] request, replace it without charge with identical Non-SP Equipment or, at the option of Xerox, with equipment with comparable features and capabilities." Pl.'s SOF, ¶ 25 (quoting Atkinson Aff., Ex. A, ¶ 1). Paragraph 1 of the Terms and Conditions of the Finance Lease further states that if "the performance of SP Equipment delivered under [the] [Finance Lease] is not at least substantially consistent with" agreed-upon performance expectations, "Xerox will, at [JCTB's] request replace the SP Equipment without charge with identical SP Equipment, or at Xerox's option, with Xerox equipment with comparable features and capabilities." *Id.*, ¶ 26 (quoting Atkinson Aff., Ex. A., ¶ 1).

The UCC authorizes the parties to a lease agreement to fashion their own remedies. *See* N.Y. U.C.C. Law § 2-A-503(3) ("Consequential damages may be liquidated under Section 2-A-504, or may otherwise be limited, altered, or excluded unless the limitation, alteration, or exclusion is unconscionable. . . ."); *see also* N.Y. U.C.C. Law 2-A-101, Off. Cmt. (recognizing and incorporating the "fundamental tenet of the common law" of "freedom

of the parties to contract"). "[C]ourts applying New York law routinely enforce such limitations [on remedies] according to their terms." *Ace Sec. Corp. Home Equity Loan Tr., Series 2007-HE3 ex rel. HSBC Bank USA, Nat. Ass'n v. DB Structured Prod., Inc.*, 5 F. Supp. 3d 543, 553 (S.D.N.Y. 2014) (citing *Baidu, Inc. v. Register.com, Inc.*, 760 F. Supp.2d 312, 317–18 (S.D.N.Y. 2010)). "Such limitations clauses are enforced unless the specified remedy 'fail[s] of its essential purpose.'" *Maltz v. Union Carbide Chemicals & Plastics Co.*, 992 F. Supp. 286, 304 (S.D.N.Y. 1998) (quoting N.Y. U.C.C. § 2-719(2); citations omitted; brackets in original). A remedy fails of its essential purpose if "the circumstances existing at the time of the agreement have changed so that enforcement of the limited remedy would essentially leave plaintiff with no remedy at all." *American Tel. & Tel. Co. v. New York City Human Resources Admin.*, 833 F. Supp. 962, 986 (S.D.N.Y. 1993) (citations omitted). In general, the question as to whether changed circumstances have caused a limited remedy to fail of its essential purpose is factual rather than legal. *Piper Acceptance Corp. v. Barton*, No. 83 Civ. 4998(CSH), 1987 WL 5801, at *2 (S.D.N.Y. Jan. 14, 1987). Where the facts pleaded are insufficient on their face, dismissal is a matter of law is appropriate. *See Maltz*, 992 F. Supp. at 304 (granting motion to dismiss where plaintiffs "have not even suggested that enforcement of the limited remedy clause would effectively deprive them of a

remedy, nor do any of the facts pleaded support such a conclusion").

Defendants assert that the limited remedy provision fails of its essential purpose because Defendants "lost the substantial benefit of [their] lease of Xerox's printer." Defendants' Memorandum of Law ("Defs.' MOL") at 4. According to Defendants, "the printing machine Xerox provided did not work as promised and as a result [they] suffered damages." *Id.* Defendants conclude that since "the resolution of this issue involves a question of fact, Defendants are entitled to discovery relating to the reliability of the equipment." *Id.*

Defendants have failed to state a counterclaim for breach of contract that is plausible on its face. As an initial matter, their allegations are asserted in a conclusory fashion; so too is their claim that they require discovery regarding the reliability of printers leased to them by Plaintiff. Moreover, Defendants have not explained why, if their chief complaint is that the printers were not reliable, the limited remedy in the Finance Lease—repair or replacement of the printers—would effectively deprive them of a remedy. Indeed, Defendants' argument is illogical. Because this counterclaim is not plausible on its face, Plaintiff's motion to dismiss it is granted. *See Maltz*, 992 F. Supp. at 304 (clause limiting marble care franchisor's warranty liability in chemical purchase agreement between franchisees and franchisor did not fail

of its essential purpose where agreement's remedy provision provided franchisees with option of replacement of the chemicals or price they paid for the chemicals).

### C. Defendants' Counterclaim for Fraudulent Inducement Fails as a Matter of Law

Plaintiff asserts that Defendants' counterclaim for fraudulent inducement fails as a matter of law because (1) any alleged reliance by Defendants on extra-contractual representations is barred by the plain language of the merger clause of the Finance Lease; (2) the alleged misrepresentations could not support a claim of fraud; and, in any event, (3) Defendants released any claim of fraud or misrepresentation when they executed the Modification Agreement. *See* Pl.'s MOL at 19-22.

"To prove fraud under New York law, 'a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'" *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996) (quoting *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995)). To sustain a claim for fraudulent inducement in the making of a contract, the plaintiff must allege a representation that is collateral to the contract, not simply a breach of a contractual

warranty. *RGH Liquidating Trust v. Deloitte & Touche LLP*, 851
N.Y.S.2d 31, 33-34 (1st Dep't), *app. denied*, 11 N.Y.3d 804 (2008).

Assuming, for the sake of argument only, that Defendants have
plausibly alleged facts to meet the first, second, and fourth
elements of a fraudulent inducement claim, they cannot satisfy the
detrimental reliance element in light of the Finance Lease's merger
clause. "It is well-established . . . that a party to a contract
cannot rely on oral representations where a contract specifically
disavows the incorporation of non-written representations." *Wells
Fargo Bank Nw., N.A. v. Taca Int'l Airlines, S.A.*, 247 F. Supp.2d
352, 368 (S.D.N.Y. 2002) ("*Taca Int'l*") (citing *Danann Realty Corp.
v. Harris*, 5 N.Y.2d 317, 323 (1959)). Significantly, no specialized
language must be used; even a "form merger provision . . . plainly
manifests" the parties' intention that all prior proceedings be
merged into and superseded by a contract's express terms. *W.W.W.
Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 160 (1990). Here, the
Finance Lease clearly and unambiguously states that "this Agreement
constitutes the entire agreement as to its subject matter [and]
supersedes all prior oral and written agreements." Pl.'s SOF, ¶ 30
& Atkinson Aff., Ex. A, ¶ 34. Moreover, the Agreements are
contracts which were "executed by knowledgeable parties who
negotiated at arm's length." *Taca Int'l*, 247 F. Supp.2d at 369–70.
Defendants plausibly cannot assert that they reasonably relied on
or were fraudulently induced to enter the agreement based on any

pre-contractual statements allegedly made by Plaintiff or its sales representatives. *See Taca Int'l*, 247 F. Supp.2d at 370 (holding that defendants' claims of reasonable reliance were contradicted by undisputed and unambiguous terms of the contracts they signed, foreclosing them from raising fraud and misrepresentation as a defense).

### D.   Leave to Replead Will Not Be Granted

Defendants have requested permission to replead their counterclaims, should the Court grant Plaintiff's motion to dismiss. Plaintiff argues that leave to replead the counterclaims should be denied because any attempt to do so would be futile.

While leave to amend generally "should be freely granted, . . . the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002) (citations omitted). The Second Circuit has held that a request to re-plead is properly be denied as futile where the problems with the complaint are substantive and would not be cured by better pleading. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). Such is the case here. As discussed above in Sections IV.B and IV.C, the Court has found that, in light

of the undisputed material facts, Defendants' counterclaims fail as a matter of law. In other words, there is no possibility that Defendants could replead the Complaint's factual allegations in such a way as to raise actionable counterclaims for fraudulent inducement and breach of contract. Therefore, leave to replead is denied as futile. *See*, *e.g.*, *Montgomery v. Cuomo*, 291 F. Supp.3d 303, 353 (W.D.N.Y. 2018) (denying leave to replead where plaintiffs were asserting a legal theory that was contradicted by Second Circuit caselaw).

## V.   Damages

The Court has reviewed Plaintiffs' submissions regarding the calculation and amount of damages, which have not been controverted by Defendants. Nor have Defendants requested a hearing on damages.

### A.   Money Damages

#### 1.   Finance Lease and Modification Agreement

Based on the Court's granting of judgment as a matter of law in Plaintiff's favor on Count I, Plaintiff is entitled to damages under the Finance Lease, as modified by the Modification Agreement. Plaintiff asserts that the measure of damages to which it is entitled is set forth in Paragraph 22 of the Finance Lease (Ex. A to Atkinson Aff.). This paragraph provides as follows:

> 22. DEFAULT & REMEDIES. You will be in default under this Agreement if (1) Xerox does not receive any payment within 15 days after the date it is due, or (2) you breach any other obligation in this or any other agreement with Xerox. If you default, Xerox may, in addition to its other remedies (including the cessation

of Maintenance Services), remove the Equipment at your expense and require immediate payment, as liquidated damages for loss of bargain and not as a penalty, of: (a) all amounts then due, plus interest from the due date until paid at the rate of 1.5% per month; (b) the Minimum Payments (less the Maintenance Services and Consumable Supplies components thereof, as reflected on Xerox's books and records) remaining in the Term, discounted at 4% per annum; (c) the applicable Purchase Option; and (d) all applicable Taxes. You will pay all reasonable costs, including attorneys' fees, incurred by Xerox to enforce this Agreement. If you make the Equipment available for removal by Xerox within 30 days after notice of default, in the same condition as when delivered (reasonable wear and tear excepted), you will receive a credit for the fair market value of the Equipment as determined by Xerox, less any costs incurred by Xerox.

*Id.*, Ex. A, ¶ 22.

Therefore, Plaintiff has requested, as the first portion of liquidated damages under the Finance Lease as modified, referenced in Atkinson Aff., Ex. A, ¶ 22(a), "all amounts then due" at the time of Defendants' default. Plaintiff has submitted proof that the unpaid balance of the invoices outstanding at the time of their default totals $65,805.48. Atkinson Aff., ¶ 20 & p. 6, nn. 1-2 (setting forth detailed calculations and formulae used).

The second component of liquidated damages under the Finance Lease as modified by the Modification Agreement, referenced in Atkinson Aff., Ex. A, ¶ 22(b), consists of "the Minimum Payments (less the Maintenance Services and Consumable Supplies components thereof, as reflected on Xerox's books and records) remaining in the Term, discounted at 4% per annum." Plaintiff has submitted proof that this second component of liquidated damages totals

$494,453.60. *See* Atkinson Aff., ¶ 21 & p. 6, nn. 1-2 (setting forth detailed calculations and formulae used).

Plaintiff is disclaiming recovery under the Purchase Option of the Leased Equipment as a third component of liquidated damages under the Finance Lease as modified by the Modification Agreement, referenced in Atkinson Aff., Ex. A, ¶ 22(c). *See* Atkinson Aff., ¶ 22.

With regard to any offsets or credits, Plaintiff indicates that because it did not invoice Defendants for, and does not here seek recovery of the Purchase Option, and because Defendants did not make the Leased Equipment "available for removal by Xerox within 30 days after notice of default," it cannot apply the credit for the fair market value of the Leased Equipment referenced in Atkinson Aff., Ex. A, ¶ 22.

Subsequent to the commencement of this matter in February 2018, Plaintiff received two payments made by or on behalf of JCTB totaling the sum of $2,718.36, which reduce the amount due under the Finance Lease as modified by that amount. Atkinson Aff., ¶ 24.

Accordingly, the principal amount of liquidated damages due from JCTB (as lessee), Bui (as guarantor), and Caudillo (as guarantor) pursuant to the Finance Lease, as modified by the Modification Agreement, is $557,540.72 ($65,805.48 due pursuant to invoices outstanding at the time of default plus $494,453.60 in accelerated balances calculated in accordance with the terms of the

Finance Lease and applying all applicable credits minus the $2,718.36 in payments submitted by or on behalf of JCTB, after default). Atkinson Aff., ¶ 25.

### 2. Promissory Note

Based on the Court's granting of judgment in Plaintiff's favor on Count II, Plaintiff is entitled to damages under the Promissory Note. As part of the Modification Agreement, the parties agreed that JCTB, as debtor, "shall execute and deliver to Xerox a Promissory Note in the amount of $186,401.95 in the form required by Xerox." The principal of the Promissory Note represented a portion of the past due invoiced amounts JCTB owed to Xerox under the Finance Lease as set forth in Exhibit A to the Modification Agreement.

JCTB agreed to pay this principal ($186,401.95) plus interest calculated at a rate of 8.75 percent per annum from December 15, 2016, making monthly payments of $1,359.18 for months 1-24 of the term of the Promissory Note, and then making monthly payments of $3,846.82 for months 25-84 of the term of the Promissory Note, with payments due on the 20th day of each month beginning January 20, 2017. Atkinson Aff., ¶¶ 27-28. The Promissory Note provides that if payment is not received by Plaintiff within ten (10) days after its due date, JCTB shall pay an additional charge equal to 5 percent of the delinquent payment or the highest additional payment allowed by law, whichever is greater. *Id.*, ¶ 29.

JCTB made payments totaling $14,950.98 before it defaulted pursuant to the Promissory Note. Atkinson Aff., ¶ 34.

Plaintiff has submitted proof that a total of $248,478.54 is due and owing from JCTB pursuant to the Promissory Note. This amount was calculated by subtracting the $14,950.98 in payments made by JCTB, from the $263,429.52 total of all payments that JCTB agreed to make pursuant to the Promissory (24 payments of $1,359.18 and 60 payments of $3,846.82).

### 3. The Guaranty

In light of the Court's awarding of judgment in Plaintiff's favor on Count III, Plaintiff is entitled to damages pursuant to the Guaranty. By signing the Guaranty, Bui and Caudillo expressly agreed to "absolutely and unconditionally" guarantee to Xerox "the full and prompt payment when due, of all amounts owed by [JCTB] to Xerox," including all amounts due or to become due under the Modification Agreement, the Promissory Note, and "all sale agreements and leases now or hereafter between Xerox and [JCTB], including, without limitation" the Finance Lease. Atkinson Aff., ¶ 40 & Ex. I.

Neither Bui, Caudillo, JCTB, nor any other person or entity has paid any portion of the outstanding obligations owed by JCTB to Plaintiff pursuant to the agreements outlined above, including JCTB, Bui, and Caudillo's payment obligations pursuant to the Finance Lease as modified by the Modification Agreement

($557,540.72) and JCTB's payment obligations under the Promissory Note ($248,478.54). Accordingly, the sum of $806,019.26 remains outstanding and due from Bui and Caudillo to Plaintiff, pursuant to the Guaranty ($557,540.72 due under the Finance Lease, as modified by the Modification Agreement plus $248,478.54 due under the Promissory Note).

### 4. Reasonable Attorneys' Fees and Costs

Pursuant to Paragraph 22 of the Finance Lease as modified by the Modification Agreement (Exhibit A), Page 2 of the Promissory Note (Atkinson Aff., Ex. H), and Paragraph 5 of the Guaranty (Atkinson Aff., Ex. I), Plaintiff also is entitled to recover "all reasonable costs, including attorneys' fees, incurred by Xerox to enforce" each of these agreements. Atkinson Aff., ¶¶ 49-50. Plaintiff indicates that its attorneys will be submitted additional proof of these damages.

### B. Declaratory Relief Under 28 U.S.C. § 2201

Based on the Court's granting of judgment as a matter of law on Count IV, Plaintiff is entitled to a judgment declaring as follows: (1) Plaintiff is the lawful owner of the Leased Equipment; (2) JCTB's right to possession of the Leased Equipment is limited by the terms of the Finance Lease as modified by the Modification Agreement; (3) JCTB has materially breached and defaulted on its obligations under the Finance Lease as modified by the Modification Agreement; (4) JCTB has no current right to possess or retain the

Leased Equipment; and (5) Plaintiff is entitled to immediately retake possession of the Leased Equipment.

## VI. Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment and to Dismiss Counterclaims (Docket No. 17) is granted. Defendants' counterclaims are dismissed with prejudice. Plaintiff is granted summary judgment on Counts I through III of the Complaint and is entitled to a total compensatory damages award of $806,019.26 on those counts. Declaratory judgment is awarded to Plaintiff on Count IV, entitling it to immediately retake possession of the Leased Equipment, which is identified with particularity in the Complaint. By separate application, Plaintiff shall submit proof of its reasonable attorneys' fees and costs. Thereafter, Defendants will have thirty (30) days to file any objections to Plaintiff's request. The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:      November 2, 2018
            Rochester, New York